In the Matter of the Arbitration between MICHAEL MAYE et al., Respondents, and RICHARD BLUESTEIN et al., as Trustees of the Firemen's Variable Supplemental Fund, Appellants. (Proceeding No. 1.)

In the Matter of the Arbitration between DAVID J. McCORMACK et al., Respondents, and RICHARD BLUESTEIN et al., as Trustees of the Uniformed Fire Officers Variable Supplement Fund, Appellants. (Proceeding No. 2.)

First Department, November 12, 1974.

---

*Francis F. Caputo* of counsel (*L. Kevin Sheridan* with him on the brief; *Adrian P. Burke, Corporation Counsel*), for appellants.

*Murray A. Gordon, P. C.* (*Mark K. Bennenson* and *Robert A. Kennedy* with him on the brief), attorney for David J. McCormack and another and *Doran, Colleran, O'Hara Pollio & Dunne, P. C.*, attorneys for Michael Maye and another, respondents.

CAPOZZOLI, J. Pursuant to section B19–40.0 *et seq.* and section B19–60.0 *et seq.* of the Administrative Code of the City of New York, two parallel but separate "variable supplements funds" were established for the uniformed firemen and the uniformed fire officers of the City of New York (L. 1970, ch. 877). These funds consist of what is referred to as "skim off" moneys paid from the existing article 1B pension fund system (Administrative Code, tit. B, art. 1). The "skim off" moneys are to be paid through the funds to fire department retirees as supplemental benefits in accordance with section B19–7.681 of the code. The two funds are entities separate and distinct from the fire department pension funds (§ 19.41.0, subd. b and § B19.61.0, subd. b).

They are administered by a board of trustees. The board of trustees of each of the funds is composed of two city and two employee organization members (§ B19–42.0, subd. b and § B19–62.0, subd. b). At least three votes are required for any board action (§ B19–42.0, subds. c, d and § B19–62.0, subds. c, d). Subdivisions d of the cited sections provide as follows: "d. (1) In the event that the votes of at least three members of such board are not cast in favor of any resolution proposed, such dispute shall be promptly referred to the arbitrator, designated, for the purpose of resolving such disputes, in the col-

lective bargaining agreement then in effect between the city and the association. Such arbitrator shall determine such dispute as expeditiously as possible and his determination shall be adopted by the board."

Subdivision f of section B19–42.0 and subdivision f of section B19–62.0 provide that: " f. The fire commissioner shall assign to the board such number of clerical and other assistants as may be necessary for the performance of its functions."

The two city trustees and the two union trustees each prepared a separate and differently worded resolution with regard to staffing the funds. The union trustees took the position that subdivision f did not preclude the hiring by the funds themselves of outside professionals. The union trustees on each board prepared the following resolution for adoption: " Section 11. Staff and Facilities. In addition to the staff provided pursuant to Subdivision f of Section B19–62.0 of the Code, by the Fire Commissioner, the Board shall employ such administrative, legal or expert assistance as it deems necessary, and further, the Board shall lease premises and purchase or lease materials, supplies and equipment as it shall deem necessary."

The city trustees, viewing the funds as city agencies and therefore subject to all statutes applicable to city agencies, proposed the following resolution: " Section 11. Administrative Staff. Pursuant to Subdivision f of Section B19–62.0 of the Code, the Fire Commissioner shall assign to the Variable Supplements Fund Board such number of clerical and other assistants as may be necessary for the performance of its functions. Clerical and other assistants assigned to such Board shall not receive directly or indirectly an pay or emolument from the Variable Supplements Fund for their services."

Both resolutions were presented to the boards of trustees for action by the members and the vote was two to two in each instance. Being thus deadlocked, it was necessary to refer the issue to the arbitrator so that he could break the tie, as provided in paragraph 1 of subdivision d, hereinabove cited. After having considered the matter, the arbitrator voted in favor of the resolution offered by the union trustees and the boards were then under obligation to declare the resolution offered by the union trustees as adopted.

At this point attention is directed to the provisions of subdivision a of section B19–42.0 and subdivision a of section B19–62.0 of the Administrative Code which provide as follows: " The variable supplements fund shall be administered by a board of trustees which shall, *subject to applicable provisions*

*of law and to the prior approval of the board of estimate,* from time to time *establish rules and regulations for the administration and transaction of the business of such fund and for the control and disposition thereof.''* (Emphasis supplied.)

The language cited makes clear that, while the boards of trustees have the power to establish rules and regulations for the administration of the business of the fund, such rules and regulations are subject to prior approval of the Board of Estimate before they can become effective. In fact, before the instant deadlock the boards of trustees agreed on 10 proposed regulations and submitted them to the Board of Estimate for approval.

The record before us indicates that the boards of trustees did not seek the approval of the Board of Estimate on the proposed rule which was deemed adopted when the arbitrator cast the deciding vote. It is obvious from the language cited that, before the boards of trustees could act upon this resolution, the Board of Estimate should have been petitioned to give its approval to same. The resolution in question could not become effective until such approval was given and, in addition, if it was adopted by the Board of Estimate, it was still subject to the applicable provisions of law. These two conditions cannot be disregarded, or ignored, and they are binding on the trustees and the arbitrator.

Instead of obtaining the approval of the Board of Estimate, the union trustees instituted a proceeding under article 75 of the CPLR to confirm the award of the arbitrator. The city trustees cross-moved for vacatur. Special Term held that the arbitrator had imperfectly executed his powers because he had failed to arrive at an explicit determination `` specifying the fiscal source, or fund, and the extent to which moneys therefrom shall be lawfully derived to execute the power to incur operational expenses ''.

On remand, the arbitrator concluded that these costs and expenses were to come out of the moneys of the funds themselves. Again the matter went to Special Term on the petition of the union trustees to confirm the last-mentioned arbitrator's award and, after due consideration, judgment was granted confirming same. At the same time the cross motion of the city trustees to vacate the arbitration award was denied.

Special Term erred in granting judgment confirming the arbitration award. The arbitrator was without power to direct that the funds be empowered to employ `` administrative, legal or expert assistants * * * and * * * lease premises

and lease or purchase materials, supplies and equipment as it shall deem necessary ". Further, the arbitrator had no power to direct that the costs and expenses therefor shall be paid by the funds. Any such determination could only be made in accordance with the law which set up the funds. It must be remembered that the rules for the administration and transaction of the business of the funds were subject to applicable provisions of law and to the approval of the Board of Estimate. The rules adopted by the arbitrator were never submitted to the Board of Estimate. What law authorized the arbitrator to act in the place of said board? The issue should never have been submitted to the arbitrator.

These funds were established by legislation and nothing in the legislation can be construed to give authority to the arbitrator to determine the statutory power of the boards of trustees. While it is true that disputes which cannot be resolved by the trustees themselves are referred to arbitration, this presupposes that the unresolved dispute concerns a subject over which the law has given the boards of trustees the power to act. This is not to say that the powers of the boards of trustees is a subject for arbitration. Those powers can only be spelled out from the language of the legislation creating the funds. The construction and the interpretation of this legislation are matters for the courts and the arbitrator exceeded his powers in making the award from which this appeal is taken. It is settled law that issues dealing with matters affecting important public interest and State policies are not subjects of arbitration. (*Matter of Aimcee Wholesale Corp. [Tomar Prods.]*, 21 N Y 2d 621.)

At page 629 of the last-cited case the court said: " We have often held that the broadest of arbitration agreements cannot oust our courts from their role in the enforcement of major State policies, especially those embodied in statutory form [citing cases] ". (Also, see, *Matter of Allied Van Lines,* 35 A D 2d 191, 194, revd. on other grounds 29 N Y 2d 35; *Matter of Exercycle Corp. [Maratta]*, 9 N Y 2d 329.)

The purpose of the legislation setting up these funds is to provide supplemental retirement benefits. The only expenses which can be legally paid out of moneys of the funds are those specifically authorized in the legislation itself, viz:

(1) The payment of supplemental benefits to retirees, and
(2) Cost of arbitration.

To allow expenditures not authorized by the legislation would defeat the purposes of the fund and would result in the diminution of moneys available for payments to the retirees.

The judgment entered on March 18, 1974, confirming the arbitrator's award, should be modified on the law to the extent of striking so much thereof as directs the manner in which the union trustees' proposed section 11 is to be funded and otherwise affirmed, without costs, and without prejudice to application to the Board of Estimate.

KUPFERMAN, J. (concurring). The arbitrator broke the tie. The provision for such a determination is a salutary one in order to avoid a stalemate. It is difficult to understand the position of the City of New York with respect thereto when under the provisions of the Administrative Code whatever action is taken by the board of trustees (including a situation where an arbitrator settles a dispute) is subject to the prior approval of the Board of Estimate.

McGIVERN, P. J., LUPIANO and LANE, JJ., concur with CAPOZZOLI, J.; KUPFERMAN, J., concurs in a separate opinion.

Judgment, Supreme Court, New York County, entered on or about March 18, 1974, unanimously modified, on the law, to the extent of striking so much thereof as directs the manner in which the union trustees' proposed section 11 is to be funded and otherwise affirmed, without costs and without disbursements, and without prejudice to application to the Board of Estimate.